**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

**CHEVON MURRAY, Individually and as Mother and Natural Guardian of J.T. (age 15), Z.M., (age 11), and Z.W. (age 5),**

Plaintifffs,

-against-

**THE CITY OF NEW YORK; DETECTIVE JONATHAN MARTINEZ, Shield 3258, NYPD CRIMINAL INTELLIGENCE SECTION; DETECTIVE AVINASH PATEL, Shield 5322, NYPD CRIMINAL INTELLIGENCE SECTION, and JOHN and JANE DOES 1-20,**

Defendants.

------------------------------------------------------------------------X

**21 CV** 6892

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, by their attorney, Joel Berger, Esq., for their complaint allege, upon information and belief, as follows:

***NATURE OF THE ACTION***

1. This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including an illegal entry into and search of a duplex dwelling on July 6, 2021, by employees of the New York City Police Department (NYPD), terrorizing a single mother and her three young children. None of the plaintiffs were mentioned in the search warrant, issued on the basis of an affidavit sworn to by defendant Detective Martinez. The warrant identified only an individual named Isaiah Lamont who does not live in plaintiffs dwelling and is entirely unknown to them. Plaintiffs are the sole tenants and occupants of the dwelling, and had been the only persons with access to it since the October 2020 lease-signing -- more than 8 months prior to the police raid.

***JURISDICTION AND VENUE***

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, and

Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

***PENDENT JURISDICTION***

5. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On July 20, 2021, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York, via Certified Mail # 7015 3010 0000 2647 1845, pursuant to § 50-e of the General Municipal Law.

7. By letters dated August 10, 2021, the Comptroller's Office office acknowledged receipt of the Notice of Claim and assigned the claims numbers 2021PI020633, 2021PI020634, 2021PI020635, 2021PI020636, and 2021PI020638. 50-H hearings were conducted on December 6, 2021.

8. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

9. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

***JURY DEMAND***

10. Plaintiffs demand trial by jury in this action.

***PARTIES***

11. Plaintiffs are all citizens of the United States and residents of the State of New York.

12. Plaintiff Chevon Murray, age 32, is the lessee of a duplex dwelling in Marcus Garvey

Gardens, a private housing development in the Brownsville neighborhood of Kings County, New York, where the NYPD raid that is the subject of this lawsuit took place: 341 Bristol Street, # 1B, Brooklyn, NY 11212.

13. Plaintiff Chevon Murray brings this action both individually and as the Mother and Natural Guardian of her son J.T. (then age 14, now age 15), and her daughters Z.M (age 11) and Z.W. (then age 4, now age 5).

14. Plaintiffs are all Black individuals.

15. Plaintiff Chevon Murray is gainfully employed by the New York City Housing Authority as a maintenance worker and has no criminal record whatsoever. She has never been arrested or convicted of any criminal offense.

16. None of Chevon Murray's children have any juvenile record whatsoever. They all attend school, and none has ever been arrested or convicted of any juvenile offense.

17. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

18. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers.

19. At all times relevant herein, defendants Detective Jonathan Martinez, Shield 3258, and Avinash Patel, Shield 5322, were NYPD detectives, assigned to the NYPD Criminal Intelligence Section.

20. Martinez is the officer who swore to the allegations of the affidavit submitted to the warrant-issuing court that led to issuance of the warrant for the raid upon plaintiffs' dwelling.

21. Patel is believed to have been one of the officers in charge of the raid.

22. At all times relevant herein, John and Jane Does 1-20 were NYPD officers, detectives, or supervisors who authorized, ordered, participated in or were otherwise involved pre-execution planning and/or execution and/or post-execution critique of the raid.

23. At all times relevant herein, defendants Martinez, Patel and John and Jane Does 1-20 were acting as agents, servants and employees of defendant City of New York and the NYPD.

24. At all times relevant herein, all defendants were all acting under color of state law.

***FACTS***

25. On Tuesday, July 6, 2021, at approximately 6:10 A.M., approximately 15-20 officers of the New York City Police Department (NYPD), most of them Caucasian, all but one male, dressed in tactical gear (helmets and shields) and shining flashlights, and with firearms (including some with long guns) drawn and pointed at plaintiff Chevon Murray, broke through a door of the plaintiffs' dwelling and raided it.

26. The officers, who included defendants Martinez and Patel, did not knock or identify themselves before breaking into the dwelling.

27. Defendants told Ms. Murray that they were looking for guns and drugs.

28. Defendants proceeded to the downstairs area where Ms. Murray's three young children sleep, again with firearms drawn and pointed at the J.T..

29. At one point the officers handcuffed Ms. Murray's son, J.T., who was 14 years old on the date of the raid.

30. Plaintiffs, all of whom were barely dressed in night clothes and sleeping or recently


awoken, were terrified at this pre-dawn raid on the sanctity and privacy of their dwelling.

31. Defendants conducted a thorough search of the premises for approximately one hour, destroying property including J.T.'s dresser.

32. Plaintiffs were all confined to the premises during the search.

33. No contraband of any kind was recovered.

34. No arrests were made, and no summonses were issued.

35. The officers were primarily from the Criminal Intelligence Section of the NYPD, although they may have been assisted by officers from the NYPD's Emergency Services Unit.

36. Defendant Detective Patel of the NYPD Criminal Intelligence Section texted to Ms. Murray a copy of a warrant authorizing the search.

37. The warrant., signed by a judge on June 29, 2021, reflects that it was issued upon an affidavit of Detective Jonathan Martinez of the NYPD Criminal Intelligence Section.

38. The warrant reflects that in an affidavit presented to the warrant-issuing judge and in stenographically recorded testimony before that judge, Martinez swore that he had "probable cause for believing that certain property, namely: a firearm, ammunition, documents relating to ownership and recent occupation of the location; any safes or locked containers, will be found inside 341 Bristol Street, Apartment B, Brooklyn, NY."

39. Ms. Murray had signed a lease for the dwelling in October 2020 and moved in with her three children on January 28, 2021. She began paying rent as of the lease-signing, and nobody occupied the apartment or had access to it as of the lease-signing.

40. Ms. Murray and her three children were the sole occupants of the dwelling at the time of the raid.

41.  Ms. Murray and her three children had been the sole occupants of the dwelling since January 28, 2021 -- more than five months before the raid.

42.  Ms. Murray began moving items into the dwelling as of the October 2020 lease-signing, visiting at least once a week, and she had the only keys to the dwelling. On her many visits between signing the lease in October 2020 and formally moving her family in on January 28, 2021, there were no signs that there had been any forced entry or that anyone had been in the dwelling as of the lease-signing in October 2020. No one other than Ms. Murray and her children lived in, occupied, or had access to the dwelling between the October 2020 lease-signing and the date of the police raid on July 6, 2021 -- a period of more than 8 months.

43.  The warrant, annexed hereto as Exhibit A, makes no mention at all of Ms. Murray and her three young children.

44.  The warrant further reflects that the sole target of the raid, whose person the police were authorized to search in addition to the dwelling, was an individual identified as "Isaiah Lamont, NYSID # 09940387R, DOB 2/7/1992 described as a Black male, approximately 5"11" in height, weighing approximately 155 pounds."

45.  Plaintiffs do not know any such person.

46.  If Martinez or any other officer had received any allegations that any such person had access to or lived in plaintiffs' dwelling, any such allegations would have been more than eight months out-of-date.

47.  Plaintiffs have never even heard of anyone named Isaiah Lamont.

48.  Whomever Isaiah Lamont may be, he is a person with whom plaintiffs have no connection of any kind.

49. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the required by the Fourth Amendment to the Constitution of the United States, Article I, §12 of the Constitution of the State of New York, and numerous NYPD regulations, that the only persons with access to the dwelling since the October 2020 lease-signing, and the only persons living there since they moved in on January 28, 2021, were lessee Ms. Murray, her son J.T. (then age 14, now age 15), and her daughters Z.M (age 11) and Z.W. (then age 4, now age 5).

50. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the Fourth Amendment to the Constitution of the United States, Article I, §12 of the Constitution of the State of New York, and numerous NYPD regulations, that the only persons with access to the dwelling since the October 2020 lease-signing, and the only persons living there since they moved in on January 28, 2021, were a single mother and her three young children.

51. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the Fourth Amendment to the Constitution of the United States, Article I, §12 of the Constitution of the State of New York, and numerous NYPD regulations, that none of the plaintiffs had ever been observed by any law enforcement officers to have engaged in any illegal conduct justifying the raid, that none of them had ever been observed by any law enforcement officers having anything to do with an individual named Isaiah Lamont or anyone meeting his description, and that none of them had any criminal or juvenile records of any kind or any outstanding warrants.

52. In light of the facts that (i) no arrests were made, (ii) no contraband was recovered

and (iii) the warrant-issuing magistrate was not told that the only persons with access to the dwelling since the October 2020 lease-signing and the only persons living there since they moved in on January 28, 2021, were a single mother and her three young children, that none of them had ever been observed by any law enforcement officers to have engaged in any illegal conduct justifying the raid, that none of them had ever been observed by any law enforcement officers having anything to do with an individual named Isaiah Lamont or anyone meeting his description, and that none of them had any criminal or juvenile records of any kind or any outstanding warrants, the raid violated plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of New York, and the laws of the State of New York and the City of New York.

53. If the search warrant was based upon the allegations of a confidential informant (CI), the CI and the CI's allegations were necessarily grossly unreliable.

54. In light of the gross inaccuracy in the information upon which the warrant was obtained, it is inconceivable that defendants could have engaged in any significant inquiry to verify the reliability of any CI and any CI's allegations, and it is inconceivable that they could have provided the warrant-issuing magistrate with any truthful, thorough and verified information about the allegations upon which the warrant was sought.

55. Police officers are not shielded from liability when a search warrant is obtained by falsehoods or by deliberately or recklessly withholding relevant information from the issuing magistrate about the reliability of the allegations upon which the warrant is being sought, such as information indicating the unreliability of the confidential informant (CI) and the CI's allegations, or information indicating the absence of any significant inquiry by the police verifying the reliability of

the CI and the CI's allegations. *McColley v. County of Rensselaer,* 740 F.3d 817 (2d Cir. 2014); *Southerland v. City of New York*, 680 F.3d 127, 144-148 (2d Cir. 2012), *rehearing en banc denied,* 681 F.3d 122 (2d Cir 2012), *cert. denied*, 568 U.S. 1150 (2013); *Golino v. City of New Haven*, 950 F.2d 864, 870-72 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992); *Cook v. City of New York*, 243 F. 3d 332, 345-46 (EDNY 2017) (Pollak, U.S.M.J.).

56. The law is firmly established under *McColley* and its predecessors, going back more than a quarter-century, that police officers are not shielded from liability when a search warrant is obtained by deliberately or recklessly withholding relevant information from the warrant-issuing magistrate or by making false or inaccurate statements to the warrant-issuing magistrate.

57. Liability applies if the affidavit in support of the warrant "'knowingly and intentionally, or with reckless disregard for the truth, made a false statement…or omitted material information, and that such false or omitted information was "'necessary to the finding of probable cause.'" *McColley*, 740 F.3d at 823, quoting *Soares v. Connecticut*, 8 F. 3d 917, 920 (2d Cir. 1993), which in turn quoted *Golino v. City of New Haven*, 950 F.2d 592, 604 (2d Cir. 1991).

58. The Circuit held in *McColley* that "recklessness is inferred when the omitted information was 'clearly relevant to the determination of probable cause.'" 740 F.3d at 823.

59. The Circuit further held in *McColley* that "any omissions" in the presentation to the warrant-issuing magistrate "become all the more glaring because any material omission necessarily alters the 'totality of circumstances' upon which confidential information is to be assessed. Each omitted fact necessarily alters this totality." *Id.* at 824.

60. In *McColley* the Circuit deemed it extremely important that "McColley herself was omitted entirely from the application." 740 F. 3d at 824. Here it is obvious from the warrant itself

that the plaintiffs were "omitted entirely from the application" as targets of the raid.

61. The Circuit in *McColley* also deemed it extremely important that the magistrate "was not informed that anyone other than Stink, who was identified as the target of the drug investigation, resided in or maintained the ...apartment." *Id.* Here the magistrate was not informed that people other than the target, Isaiah Lamont, including a single mother and her three young children, "resided in or maintained" the dwelling, and were in fact the only persons with access to the dwelling since the lease-signing more than 8 months prior to the application for the warrant, and were the only residents of the dwelling for more than 5 months prior to the application for the warrant, and that there was absolutely no reliable evidence that the target lived in or had any recent relationship to the dwelling or any relationship of any kind with the residents of the dwelling.

62. The search warrant for plaintiffs' dwelling was necessarily obtained and executed in violation of numerous guidelines and requirements issued by the Police Commissioner in the wake of the death of Ms. Alberta Spruill during a raid in Harlem in May 2003, including, but not limited to:

(i) the pre-execution investigation and documentation required by NYPD Patrol Guide (PG) 212-75, including, but not limited to, investigation and documentation into who lives in the dwelling, whether any of the residents have any criminal records or outstanding warrants, and whether any of the residents are children;

(ii) the Search Warrant Execution guidelines (PG 221-17);

(iii) the Confidential Informants Guidelines (PG 212-68);

(iv) the Formal Post-Execution Critique (PG 212-106) that must be prepared by the Commanding Officer who supervised execution of the warrant and the review of

that Critique by overhead command -- especially important in cases where, as here, execution of a search warrant produces no contraband sought by the officers as justification for the raid and no arrests whatsoever;

(v) Commissioner Kelly's report to the Mayor on the *Spruill* case (May 30, 2003) at 8, 9, 10, 12 and 20, which in turn quotes Chief of Patrol Estavillo's memorandum of October 23, 2002 (Memorandum Number 567s.02); and

(vi) Commissioner Kelly's testimony before the New York City Council Committee on Public Safety (June 4, 2003) at 14, 16-17, 33-34, 41, 48, 49, 88-89, and 105.

63. The raid has left plaintiffs shattered and frightened.

64. Plaintiffs have flashbacks and nightmares about the incident, and are scared every time they hear noises, for fear that the police are returning.

65. Ms. Murray's three young children were especially traumatized by experiencing such an encounter with the police at such an early age. Ever since the raid Z.M. frequently sleeps with her mother because she does not feel secure alone in her bed.

66. Plaintiffs are fearful that if the police could do this sort of thing to them once it could easily happen again. The children have even asked to move because they fear that the police will return to the dwelling.

67. Plaintiffs are scared that they have no defense against this kind of police intrusion into the sanctity of their dwelling.

***FIRST CLAIM FOR RELIEF***

68. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-67.

69. Defendants Martinez, Patel and John and Jane Does 1-20, by their conduct toward

plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the Constitution of the United States, Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York, and the laws of the State of New York and the City of New York.

***SECOND CLAIM FOR RELIEF***

70. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-67 and 69.

71. The conduct toward plaintiffs alleged herein constituted an illegal entry into and search of a dwelling, false imprisonment of plaintiffs, destruction and seizure of property, and employee negligence.

72. The conduct toward plaintiffs alleged herein subjected them to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

***THIRD CLAIM FOR RELIEF***

73. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-67, 69, and 71-72.

74. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law, city law and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

***PRAYER FOR RELIEF***

**WHEREFORE,** Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

    (c)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    (d)    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 14, 2021

/s/ Joel Berger
**JOEL BERGER**
675 Third Avenue, 8th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**