UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
CHEVON MURRAY, individually and as mother :
and natural guardian of J.T., Z.M., and Z.W.,    :
                                                 :
                    Plaintiff,          :                    **ORDER**
                                                 :
            -against-                   :                    21 Civ. 6892 (EK) (VMS)
                                                 :
THE CITY OF NEW YORK, DETECTIVE         :
JONATHAN MARTINEZ, SHIELD 3258,         :
NYPD CRIMINAL INTELLIGENCE SECTION, :
DETECTIVE AVINASH PATEL, SHIELD 5322,:
NYPD CRIMINAL INTELLIGENCE SECTION, :
and JOHN AND JANE DOES 1-20,            :
                                                 :
                    Defendants.          :
---------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Chevon Murray, individually and as mother and natural guardian of J.T., Z.M.,

and Z.W. ("Plaintiff"), commenced this action against Defendants The City of New York (the

"City"); Detective Jonathan Martinez, Shield 3258, NYPD Criminal Intelligence Section ("Det.

Martinez"); and Detective Avinash Patel, Shield 5322, NYPD Criminal Intelligence Section

("Det. Patel" and, collectively with the City and Det. Martinez, "Defendants").  See Compl.,

ECF No. 1.  Plaintiff asserted claims pursuant to the Fourth and Fourteenth Amendments to the

U.S. Constitution; 42 U.S.C. § 1983; Article I §§ 1, 6, 11 and 12 of the New York State

Constitution; and unspecified State and City laws against Det. Martinez and Det. Patel.  See id.

Plaintiff asserted claims pursuant to Article I §§ 1, 6, 11 and 12 of the New York State

Constitution; unspecified State and City laws; and common law against the City.  See id.  The

factual basis for Plaintiff's complaint is an alleged "illegal entry into and search of a duplex

dwelling on July 6, 2021, by employees of the New York City Police Department," arising from

1

a search warrant "issued on the basis of an affidavit sworn to by . . . [Det.] Martinez[,] . . . identif[ying] only an individual named Isaiah Lamont who does not live in [P]laintiff['s] dwelling and is entirely unknown to [her]" and her children.  Id. at 1.  Defendants filed answers.  See Answer, ECF No. 28; Answer, ECF No. 33.

Before the Court are the in camera review of unredacted documents underlying the search warrant at issue, in which the redactions pertain to a confidential informant (the "CI"), arising from Plaintiff's motion for such review, see Mot. for In Camera Review, ECF No. 45, and Plaintiff's motion to compel Defendants' response to a document request, which seeks historical information as to the CI's reliability, see Mot. to Compel, ECF No. 52.  As to the former, the Court concludes that some redactions properly stand and that some redactions must be removed.  As to the latter, the Court grants Plaintiff's motion with the limitations stated below.

## I.    LEGAL STANDARD

Parties in a civil action are generally entitled to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  As to the relevance component, in the context of evidence, Fed. R. Evid. 401 defines evidence as relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action."  Here,

> [a] plaintiff can demonstrate that her right not to be searched absent a search warrant supported by probable cause was violated where the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the

2

finding of probable cause.  Recklessness is inferred when the omitted information
was clearly critical to the determination of probable cause.  The materiality of a
misrepresentation or an omission in this context is a mixed question of law and
fact.  The legal component depends on whether the information is relevant to the
probable cause determination under controlling substantive law.  But the weight
that a neutral magistrate would likely have given such information is a question
for the finder of fact, so that summary judgment is inappropriate in doubtful
cases.  In determining whether omitted information was necessary to the finding
of probable cause, we look to the hypothetical contents of a corrected application
to determine whether a proper warrant application, based on existing facts known
to the applicant, would still have been sufficient to support arguable probable
cause to make the arrest as a matter of law.  In performing the corrected affidavit
analysis, we examine all of the information the officers possessed when they
applied for the arrest warrant.  While the law does not demand that an officer
applying for a warrant volunteer every fact that arguably cuts against the
existence of probable cause, he must not omit circumstances that are critical to its
evaluation.

When making a determination of whether probable cause exists to support the
issuance of a search warrant when the facts offered are based upon information
from a confidential informant, this Court examines the totality of the
circumstances.  In performing this examination of the totality of the circumstances
. . . the court may consider . . . an informant's veracity, reliability and basis of
knowledge, and the extent to which an informant's statements . . . are
independently corroborated.  These considerations, however, are not an
exhaustive listing of what constitutes the totality of the circumstances.

McColley v. Cty. of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014) (citations & quotations

omitted).  If "information has been provided by a confidential informant who has proven reliable

in the past, a warrant is [not] necessarily supported by probable cause when based upon

information from that confidential informant"; rather, "in assessing whether there is probable

caused based upon a confidential informant's reports, courts must look to all of the

circumstances bearing upon the information's reliability."  Id. at 826 (citation omitted).  In sum,

"[a] confidential informant's credibility is plainly relevant – even critical – to the probable cause

determination."  Id. at 825.

As to the privilege component, one such privilege is the law-enforcement privilege.

The first step in "assessing a claim of law[-]enforcement privilege [is] determin[ing] if the law[-]enforcement privilege applies to the documents at issue." In re City of New York, 607 F.3d 923, 944 (2d Cir. 2010). The party asserting such privilege "bears the burden of showing . . . that the documents contain information that the law[-]enforcement privilege is intended to protect," which "includes information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel [or] the privacy of individuals involved in an investigation, and information that would otherwise . . . interfere[ ] with an investigation." Id. (citations & quotations omitted); see In re Terrorist Attacks on September 11, 2001, 523 F. Supp. 3d 478, 502 (S.D.N.Y. 2021) (reasoning that "[t]he FBI has explained why this unclassified information falls within the privilege's scope," given that "this information includes information revealing the FBI's investigative interest in certain individuals, specific law enforcement methods and techniques used in the FBI's national security investigations, specific information obtained, or gaps in information, relating to the investigations, the FBI's opinions and conclusions about certain witnesses and evidence gathered in the investigations, personal information regarding third parties which if revealed would discourage cooperation, and information which would indirectly tend to reveal confidential cooperation from a foreign government" (citation omitted)); Goodloe v. City of New York, 136 F. Supp. 3d 283, 295 (E.D.N.Y. 2015) (reasoning that "Defendants have shown that most of the requested CI information would compromise the CI's safety and the continuing availability of confidential-informant-based investigations, both of which are important public interests that the law-enforcement privilege is meant to protect" (citation omitted)). If the law-enforcement privilege

applies, such application gives rise to "a pretty strong presumption against lifting the privilege."
In re City of New York, 607 F.3d at 945 (citation & footnote omitted).

A court that has determined that the law-enforcement privilege applies must next determine whether the party seeking disclosure has rebutted the presumption against disclosure, which requires a showing "(1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is [not] available through discovery or from other sources, and (3) that the information sought is importan[t] to the party's case," which requires a showing of "a compelling need."  In re City of New York, 607 F.3d at 945 (citation & quotations omitted omitted); see also In re Terrorist Attacks on September 11, 2001, 523 F. Supp. 3d at 503 (reasoning that "information about the FBI's assessment of evidence, information revealing the gaps in the FBI's knowledge, and information concerning the FBI's techniques and procedures are in no way 'critical' to the limited jurisdictional inquiry in this litigation," with the same "hold[ing] true for personal information and information gathered for performance management"); Goodloe, 136 F. Supp. 3d at 299-301 (noting that "Defendants concede . . . that Plaintiff's lawsuit is non-frivolous and brought in good faith," reasoning that "Plaintiff cannot obtain the privileged CI information that he seeks from other sources," and concluding that "the privileged CI information is important to Plaintiff's claim" because "the credibility and veracity of the CI's reports about Plaintiff's other involvement in drug buys becomes very important to Plaintiff's ability to meet his burden of proof that Defendants had no probable cause to initiate or continue the prosecution against Plaintiff for the conspiracy charge," provided that "Plaintiff convinces a fact-finder that Defendants fabricated evidence," and because, "[i]nsofar as Plaintiff's theory is that Defendants fabricated evidence or coerced the CI to fabricate evidence, the state criminal court judge's reliance upon that allegedly fabricated evidence cannot have any

definitive significance for the presence of probable cause for the conspiracy charges at this time" (citations omitted)).

If the party seeking disclosure has rebutted the presumption against disclosure, the final step is to "balance [t]he public interest in nondisclosure . . . against the need of a particular litigant for access to the privileged information," such that "disclosure is required only if that compelling need outweighs the public interest in nondisclosure." In re City of New York, 607 F.3d at 945 (citation & quotations omitted); see In re Terrorist Attacks on September 11, 2001, 523 F. Supp. 3d at 504 (reasoning that, "even if the Court were to accept that Plaintiffs have a compelling need for disclosure, they have not established that the need outweighs the public interest in nondisclosure," which "is substantial"); Goodloe, 136 F. Supp. 3d at 301 (reasoning "that Plaintiff's interest in the privileged CI information . . . is important to Plaintiff's allegation that Defendants lacked probable cause for the drug conspiracy charge and . . . the additional troubling allegation that Plaintiff was targeted for malicious prosecution by police in retaliation for Plaintiff's successful civil lawsuit challenging his September 2, 2005 arrest" but "that the privileged CI information in this case is highly sensitive," disclosure of which "would compromise the CI's confidentiality and safety [and] . . . would likely have a chilling effect upon the willingness of other individuals to aid in investigations and prosecutions as confidential informants going forward," such "that the public's interest in nondisclosure outweighs" Plaintiff's compelling need (citations omitted)).  Then, "[i]f the district court determines that the law[-]enforcement privilege does not protect the documents at issue, [such that] the documents must be disclosed[,] . . . the district court may order that the documents be revealed only in a specific way." In re City of New York, 607 F.3d at 949 (citation & quotations omitted).

In order to perform the necessary analysis,

> the district court must ordinarily review the documents in question [and] . . . may, in the exercise of its informed discretion and on the basis of the circumstances presented, require that the party possessing the documents appear ex parte in chambers to submit the documents for in camera review by the judge, after which the materials can be returned to the custody of that party.

Id. at 948-49 (citations omitted).

## II.   IN CAMERA REVIEW

### A.   Pertinent Procedural History

#### i.   The Court Ordered Defendants To Coordinate With The Kings County District Attorney's Office (The "KCDA") To Obtain The Documents Underlying The Search Warrant At Issue.

In her numerous filings with the Court, Plaintiff included multiple, duplicative informal requests that Defendants be directed to request that the KCDA seek an unsealing order, or, alternatively, that this Court issue an unsealing order, as to (1) the affidavit associated with search warrant No. 717-2021, signed June 29, 2021, for 341 Bristol Avenue, Apartment B, Brooklyn, New York (the "Affidavit"); (2) the transcript of the associated hearing for search warrant No. 717-2021 (the "Transcript"); and (3) the return on search warrant No. 717-2021 (the "Return").  See, e.g., Opp. to Mot. for Ext. of Time to Answer, ECF Nos. 8, 8-1; Letter, ECF No. 9; Mot. for Sanctions and Opp. to Mot. to Stay, ECF No. 15; Mot. for Default Judgment, ECF No. 19; Letter, ECF No. 21; Letter and Proposed Unsealing Order, ECF Nos. 22, 22-2; Reply to Opp. to Letter and Proposed Unsealing Order, ECF No. 26; Opp. to Mot. for Stay, ECF No. 27; Letter, ECF No. 30; Add'l Reply to Opp. to Letter and Proposed Unsealing Order, ECF No. 34; Letter and Proposed Unsealing Order, ECF Nos. 36, 36-1.

The City opposed Plaintiff's requests, to the extent that they contemplated that the City be required to request that the KCDA seek an unsealing order and coordinate with the KCDA in

7

obtaining the documents sought by Plaintiff.  See, e.g., Opp. to Letter and Proposed Unsealing

Order, ECF No. 25; Letter, ECF No. 29.[1]

The Court, in response, directed Defendants[2] "to obtain and produce redacted versions of

the warrant application, transcript of the warrant hearing and the Return on the warrant."

5/25/2022 Order.  The Court also directed Defendants "to contact the Kings County District

Attorney's Office, request that the required documents be unsealed for the limited purpose of

discovery in this case, obtain an estimate of how long it will take to obtain the required

documents and notify the Court of same by June 1, 2022."  Id.

> ## ii.     The Court Ordered Defendants To File A Motion For An Unsealing
> Order As To The Documents Underlying The Search Warrant At
> Issue.

Defendants notified the Court by letter that "the KCDA . . . requires an unsealing order

before they provide . . . Defendants with any of the documents, and that they do not make such

motion to unseal the documents."  Letter, ECF No. 37 at 1.  Defendants also stated that, provided

that any proposed unsealing order would permit the KCDA to redact privileged information from

the documents that are the subject of the proposed unsealing order, given that the matter involves

a confidential informant, the KCDA would consent to the entry of an unsealing order.  See id. at

1-2.  Defendants noted that the KCDA estimated a two-week response time following the entry

of any unsealing order.  See id. at 2.

---

[1] This letter was filed in response to the Court's Order requiring the City to "file a status letter . .
. confirming the City's position regarding its obligation to produce the records requested in
Plaintiff's proposed unsealing order in light of the other cases discussed at the conference."
3/23/2022 Order.

[2] At this point in the litigation, counsel for the City also appeared on behalf of Det. Martinez and
Det. Patel.  See Notice of Appearance, ECF No. 32.

Plaintiff then requested that an unredacted copy of any unsealed materials be provided to the Court for in camera review, specifically noting "no objection to redactions that would reveal the identity of the CI, but . . . submit[ting] that all other redactions in the unsealed materials should be closely scrutinized by the Court."  Letter, ECF No. 38.

Defendants filed a responsive letter, (1) arguing that "Plaintiff[] failed to make a good faith – or any – effort to address [her] . . . request before burdening the Court" and therefore violated "Rule III(b) of the Court's Individual Rules of practice, the Federal Rules of Civil Procedure, and the Local Civil Rules"; (2) contending that Plaintiff's request lacked clarity as to whether it pertained to documents already produced in discovery or the documents sought from the KCDA; (3) if the former, containing additional arguments; and, (4) if the latter, arguing that the request was premature and unripe.  Letter, ECF No. 39 at 2-3.

Plaintiff filed an additional responsive letter, (1) noting that she had only sought the in camera review of the unredacted Affidavit, Transcript and Return, and (2) stating that Defendants and the KCDA agreed to the requested relief.  See ECF No. 40 at 1.

The Court (1) permitted the filing of a motion for an unsealing order by Defendants, as well as an opposition by Plaintiff; (2) directed that any proposed unsealing order need not require in camera review of the unredacted documents that are the subject of the unsealing order; and (3) permitted any party to move for in camera review of such unredacted documents following their production.  See 6/14/2022 Order.

Defendants filed a motion for an unsealing order as to "the warrant application, transcript of the warrant hearing, and the Return on the warrant."  Mot. for Unsealing Order and Proposed Unsealing Order, ECF Nos. 41, 41-1.  Plaintiff opposed the proposed unsealing order, only to the extent that it did not include deadlines for production, and requested that an unredacted copy of

the unsealed materials be produced to the Court for <u>in camera</u> review, noting that the KCDA had

expressed willingness to do so.  Opp. to Mot. for Unsealing Order, ECF No. 42.

The Court granted the motion for an unsealing order, ordering the KCDA "to provide

redacted copies of the search warrant, transcript of the associated hearing and Return on the

warrant to Defendants' counsel" and ordering "Defendants' counsel . . . [to] provide the

aforementioned documents to Plaintiff's counsel," each by dates certain.  7/8/2022 Order.  The

Court also denied Plaintiff's request for <u>in camera</u> review of the unredacted, unsealed documents

"for the reasons stated in the Court's 6/14/2022 Order," reasoning that

> Plaintiff only speculates that she will not be able to discern what kind of material
> was redacted from the documents to be produced; such an assessment can only be
> made upon production and review.  Given the possibility that the documents
> contain sensitive identification material, it is appropriate to proceed with caution
> until and if it can be determined that Plaintiff needs the redacted information.  It
> may be that the redacted materials will suffice.  If such redacted material is
> necessary, Plaintiff can make an appropriate request.

<u>Id.</u>

### iii.   The Court Ordered Production Of The Unredacted, Unsealed Documents For <u>In Camera</u> Review.

Plaintiff subsequently requested that the Court order the production of certain unredacted

documents that are the subject of the unsealing order for <u>in camera</u> review.  <u>See</u> ECF No. 45.

Those documents are the Affidavit and the Transcript.  Unsealing Order, ECF No. 44.  As to the

Affidavit, Plaintiff specifically took issue with the "redacted description of the alleged

transaction between the CI and the target of the warrant (Isaiah Lamont) that may provide details

as to the exact location of the alleged transaction and especially whether the CI was, in fact,

actually inside [P]laintiff's dwelling when the alleged transaction occurred."  Mot. for <u>In Camera</u>

Review, ECF No. 45 at 1.  As to the Transcript, Plaintiff specifically took issue with (1) the

redacted testimony from the CI about the dates and locations of his prior interactions with Lamont, including any that may have taken place at other locations after the target moved out of [P]laintiff's dwelling, and any that may have taken place long before [P]laintiff leased and moved into the dwelling -- many months before the raid,

and (2) the "redacted description of the alleged transaction between the CI and Lamont that may provide details as to the exact location of the alleged transaction and especially whether the CI was, in fact, actually inside [P]laintiff's dwelling when the alleged transaction occurred." Id.

In view of the prior agreement by the KCDA to provide the unredacted requested materials to the Court for in camera review, the Court ordered the KCDA "to deliver to the Chambers of the Magistrate Judge a paper copy of the unredacted materials and a redacted copy regarding the warrant and supporting materials that were provided to Corporation Counsel in connection with this case" and permitted the KCDA to "provide a letter explaining its reasons for the redactions." See 8/1/2022 Order.

Defendants sought reconsideration of the ordered production; opposed Plaintiff's request that precipitated the Order; and, alternatively, sought a two-week extension of time for the KCDA to produce the unredacted requested materials to the Court. See Mot. for Reconsid., ECF No. 46 at 1. As to reconsideration, Defendants argued that they were not afforded the opportunity to file an opposition prior to entry of the Court's Order and that Plaintiff misrepresented the KCDA's willingness to produce the unredacted requested materials for in camera review. See id. at 2-3. As to the opposition, Defendants contended (1) that Plaintiff failed to confer with Defendants prior to filing her motion, violating the Federal Rules of Civil Procedure, the Local Civil Rules, and the undersigned's Individual Rules, and (2) that Plaintiff need not have any information from the KCDA beyond that already provided. See id. at 3-4.

Plaintiff responded and urged that reconsideration be denied.  See Opp. to Mot. for Reconsid., ECF No. 47.

The Court granted the two-week extension of time for the KCDA to produce the unredacted requested materials to the Court.  See 8/16/2022 Order.  The Court denied the other relief.  See id.

Plaintiff subsequently filed a letter repeating her request for an in camera inspection of an unredacted copy of the Affidavit and the Transcript, as well as "an opportunity to review the KCDA's submission."[3]  Letter, ECF No. 49 at 1, 3.  Plaintiff supplemented her request multiple times.  See Letter, ECF No. 50; Letter, ECF No. 51; Letter, ECF No. 62; Letter, ECF No. 63.

---

[3] Plaintiff's request to review the KCDA's submission is denied.  As to the KCDA's letter containing its reasons for the redactions, the Court concurs with the KCDA's position that,

> [s]ince all of the arguments in this letter concern the KCDA's redactions to the search warrant materials, and since some of these arguments could only be properly made by providing the actual information that was redacted from the search warrant materials, the KCDA requests that this letter not be disclosed to the parties in this civil matter.

KCDA letter provided as cover letter to documents for in camera review (the "KCDA Letter"). As to the unredacted Affidavit and Transcript, providing Plaintiff with a copy of such materials would moot the in camera review process.

**B.      Discussion**[4]

The KCDA redactions of the Affidavit and the Transcript fall into two broad areas: information pertaining to the CI generally and information pertaining to the CI as related to this matter.[5]  The Court will consider each category of redacted information separately.

### i.      Information Pertaining To The CI Generally

### a.      The CI's Identification Number

The first category of redactions is the CI's identification number.  See KCDA-003, paragraph 2, line 2; KCDA-006, lines 16-17.  The KCDA argues that the CI's identification number "can easily be used to determine the identity of the CI," given that it "can be used to determine all of the other cases in which this CI has provided information," and notes that it "has no other value beyond identifying this CI."  KCDA Letter, p. 3.

This information is relevant, given that it would reveal the length of time that the CI has been working with the New York City Police Department (the "NYPD"); therefore, it speaks to the CI's experience serving as a confidential informant.  The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of

---

[4] With respect to Plaintiff's need to rebut the presumption of the applicability of the law-enforcement privilege, if the Court determines that such privilege applies to the disputed discovery, the Court must find that Plaintiff's suit is non-frivolous and was brought in good faith, see, e.g., Letter, ECF No. 63 at 2, and that the discovery as to the CI is unavailable through alternative means.  The Court so finds.  When addressing whether Plaintiff has rebutted the presumption that the privilege applies, the Court will only address whether Plaintiff has demonstrated that the information sought is important to the matter such that she has a compelling need for it, the third factor of the rebuttal analysis.

[5] The KCDA also redacted a portion of the Transcript in which the CI had a brief issue before Justice William Harrington, purportedly because such information could reveal a potential medical concern.  See KCDA-009, lines 10-11.  The redacted information is inconsequential and irrelevant to this case and is therefore not discoverable.  An analysis of the law-enforcement privilege as to this issue is therefore unnecessary, and the information may remain redacted.

13

the informant.  Plaintiff has not expressly requested that this information be unredacted and therefore has not demonstrated a compelling need for it.  The information will remain redacted.

### b.    The Initial Year Of The CI's Work With The NYPD

The second category of redactions is the year in which the CI began working with the NYPD.  See KCDA-003, paragraph 2, line 4.  The KCDA argues that this year "could give [P]laintiff and Lamont a vital clue as to the identity of the CI" because, as "the NYPD does not generally employ persons under the age of eighteen (18) years old as confidential informants," providing this year "reveals the minimum age that the CI in this case could be" and tends to identify the CI.  KCDA Letter, p. 4.

This information is relevant, given that it would also reveal the length of time that the CI has been working with the NYPD and speaks to the CI's experience.  The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of the informant.  Plaintiff did not expressly request that this information be unredacted in her underlying motion but did subsequently file a motion to compel the production of documents containing similar information as to the CI's historical reliability, which the Court addresses below.  See infra, Section III.  In her motion to compel, Plaintiff demonstrated a compelling need for information pertaining to the CI's reliability, given that, pursuant to McColley, the totality of the circumstances analysis performed to ultimately determine whether a search warrant was supported by probable cause based on information provided by the CI includes consideration of the CI's reliability.  The duration of the CI's experience working with the NYPD is tantamount to this consideration.  Balancing the public interest in nondisclosure against Plaintiff's compelling need for the information, the Court does not credit the KCDA's

argument that unredacting this information would reveal the CI's minimum age and, as a result, the CI's identity.  KCDA Letter, p. 4.  This information must be unredacted.

c.      <strong>Historical Information About The CI's Reliability</strong>

The third category of redactions is historical information as to the CI's reliability: the year in which the CI provided information to the NYPD, the number of search warrants issued on the basis of reliable information provided the CI, the location of execution of the aforementioned search warrants, the contraband recovered as a result of the aforementioned search warrants, the number of persons arrested as a result of the aforementioned search warrants, and whether and when the CI provided information leading to the issuance of a search warrant that did not yield any contraband or arrests.  See KCDA-003, paragraph 2, lines 7-10; KCDA-007, line 24; KCDA-008, lines 6-7.  The KCDA argues that disclosure of this information "could reveal the identity of the CI in this case," given that "[P]laintiff and/or Lamont or someone known to them could have knowledge of these other arrests [or unsuccessful searches] and the individuals involved in them" and could therefore "identify the individual in common to all of these arrests" or unsuccessful searches or, alternatively, that "[P]laintiff or Lamont [could] . . . conduct an investigation into these arrests" or unsuccessful searches and "discover who was arrested [or whose residences were searched] and then question them about who they think the confidential informants in their cases might be."  KCDA Letter, p. 4; see also id. at p. 6.

This information is relevant, given that it reveals historical information as to the CI's reliability.  The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of the CI.  Plaintiff did not expressly request that this information be unredacted in her underlying motion but did subsequently file a motion

to compel the production of documents containing overlapping information as to the CI's

historical reliability, which the Court addresses below.  See infra, Section III.  In her motion to

compel, Plaintiff demonstrated a compelling need for information pertaining to the CI's

reliability, given that, pursuant to McColley, the totality of the circumstances analysis performed

to ultimately determine whether a search warrant was supported by probable cause based on

information provided by the CI includes consideration of the CI's reliability.  Balancing the

public interest in nondisclosure against Plaintiff's compelling need for the information, the Court

finds that the following information must be unredacted: the year in which the CI provided

information to the NYPD, see KCDA-003, paragraph 2, lines 7; the number of search warrants

issued on the basis of reliable information provided the CI, see KCDA-003, paragraph 2, lines 7;

KCDA-007, line 24; the county in which the aforementioned search warrants were executed, see

KCDA-003, paragraph 2, line 9; and the response pertaining to the year of execution of a search

warrant based on information from the CI that yielded negative results, see KCDA-008, lines 6-

7.  This information does not have any considerable tendency, if any, to reveal the CI's identity,

and Plaintiff's need for this information is significant.  By contrast, the Court finds that the

following information is to remain redacted: the contraband recovered as a result of the

aforementioned search warrants and the number of persons arrested as a result of the

aforementioned search warrants.  See KCDA-003, paragraph 2, lines 9-10.[6]  This information

has a substantial tendency to reveal the CI's identity and, as described in the Affidavit, is of little

value to Plaintiff as it relates to substantiating the CI's reliability, or lack thereof.

---

[6] This conclusion is limited to the text of the Affidavit and is not applicable to Plaintiff's request
for cumulative and comparative information that is the subject of her motion to compel.

ii.    **Information Pertaining To The CI As Related To This Case**

a.    **Information Related To The Subject Interaction**

The first category of this type of redactions is the specific circumstances surrounding the interaction between the CI and Isaiah Lamont (the "Target"), including the date, time, precise location and details of the interaction.  See KCDA-003, paragraph 5; KCDA-004, paragraph 6, line 3; KCDA-010, lines 4-17, 19, 22; KCDA-011, lines 1-3.  The KCDA argues that, "[i]f this highly specific information was disclosed to the parties, it would almost certainly reveal the identity of the CI in this case."  KCDA Letter, p. 4; see also id. at p. 5 (stating that revealing the date of the interaction between the CI and the Target "could, at best, potentially narrow down the list of people who could be the CI in this case, and, at worst, definitively reveal the identity of the CI"); id. at p. 7 (contending that, as to a redacted "statement that Lamont allegedly made to the CI[,] . . . [a]ll it would take for the identity of the CI in this case to be revealed would be for [P]laintiff to tell Lamont about this statement and for Lamont to remember the details of this conversation").

This information is relevant, given that it is the information providing probable cause for the disputed search warrant.  The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of the informant.  Plaintiff has demonstrated a compelling need for this information, given that, in accordance with McColley, the totality of the circumstances analysis attendant to determining whether a search warrant was supported by probable cause based on information provided by a confidential informant includes consideration of the confidential informant's truthfulness, reliability and knowledge base.  When balancing the public interest in nondisclosure against Plaintiff's compelling need for the information, the public interest prevails.  This Court cannot endorse the

endangerment of a confidential informant by revealing information that could lead to the CI's identification and the concomitant effects of dissuading others from serving as confidential informants.  The information will remain redacted.

### b.      Information Regarding The CI And The Target

The second category of redactions is the historical interactions between the CI and the Target: the length of time that the CI has known the Target, prior interactions between the CI and the Target, the name used by the CI for the Target, knowledge of the Target's surname, when the CI first visited Plaintiff's residence, the number of times that the CI was located at Plaintiff's residence, and information known by the CI about the Target.  See KCDA-004, line 4, paragraph 6; KCDA-008, lines 20, 23; KCDA-009, lines 2, 5-8, 10-12, 16, 17, 19-20, & 25; KCDA-010, lines 1, 22-24; KCDA-011, lines 4-6 & 8.  The KCDA argues that revealing the duration of the relationship between the CI and the Target "could reveal the identity of the CI in this case because it specifies a particular amount of time that this CI has known Lamont, and Lamont is known to [P]laintiff," KCDA Letter, p. 5; that revealing the number of times that the CI visited Plaintiff's residence would likely enable Plaintiff and the Target to "be able to determine the identity of the CI in this case," id. at p. 6; that the name used by the CI for the Target "may only be used by the CI in this case or may only be used by a small number of people," the disclosure of which would provide "one more clue as to the CI's identity" or "could reveal the identity of the CI," id. at p. 7; that revealing certain information known by the CI about the Target "will undoubtedly narrow down the potential individuals who could be the CI in this case to a short list of people," id.; and that information on the historical interactions between the CI and the Target "is highly specific in nature and could easily lead to the identity of the CI in this case," id. at 7-8.

This information is relevant, given that it speaks to the CI's relationship and interactions with the Target and the CI's reliability pertaining to the information provided in relation to the search warrant that Plaintiff seeks to dispute.  The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of the informant.  Plaintiff has demonstrated a compelling need for this information, given that the CI's relationship and interactions with the Target directly relate to the reliability of the information provided in relation to the disputed search warrant at the center of Plaintiff's case.  When balancing the public interest in nondisclosure against Plaintiff's compelling need for the information, the public interest prevails.  This Court cannot endorse the endangerment of a confidential informant by revealing information that could lead to his or her identification and the concomitant effects of dissuading others from serving as confidential informants.  The information will remain redacted.

### c.    Target Identification Procedures

The third category of redactions is the type of identification procedure used for the CI to identify the Target.  See KCDA-004, paragraph 6, line 1; KCDA-009, line 23.  The KCDA argues that "[t]he type of identification procedure that was utilized by the NYPD is based on how well the parties know each other," such that revealing it "would reveal how well the CI knows Lamont, which would certainly narrow down for [P]laintiff and/or Lamont the number of individuals who could be the CI in this case."  KCDA Letter, p. 5.

This information is relevant, given that it evidences the level of familiarity between the CI and the Target.  The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of the informant.  Plaintiff has

not expressly requested that this information be unredacted and therefore has not demonstrated a compelling need for it. The information will remain redacted.

### d.    CI's Activity In The Vicinity

The fourth category of redactions is the CI's activity in relation to the vicinity of the disputed search warrant. See KCDA-012, lines 5-6. The KCDA argues that revealing such information, in view of Plaintiff's awareness of people in the vicinity of her residence, "could provide one more clue as to the CI's identity." KCDA Letter, p. 8.

This information is relevant, given that it reveals the CI's familiarity with the vicinity of the disputed search warrant and therefore speaks to the reliability of the information he or she provided. The law-enforcement privilege applies, as the KCDA has shown that revealing this information would undermine the confidentiality of the informant. Plaintiff has not expressly requested that this information be unredacted and therefore has not demonstrated a compelling need for it. The information will remain redacted.

## III.    MOTION TO COMPEL

### A.    Pertinent Procedural History

Plaintiff moved to compel Defendants' response to the following document request:

For all search warrants obtained and searches conducted upon information supplied by the Confidential Informant of this case (hereinafter "CI"), for two years prior to the date of the warrant application in this case (i.e., from June 29, 2019 through June 29, 2021), please provide:

(a) All NYPD reports reflecting specifically what the CI alleged, including but not limited to (i) reports to the supervisor or supervisors who approved the request to apply for a search warrant, (ii) the NYPD pre-execution report, and (ii) any other documents, including but not limited to DD5s, reflecting specifically what the CI alleged; and

(b) All NYPD reports reflecting specifically the results of execution of the warrant, including but not limited to (i) post-execution reports, (ii) property clerk documents, and (iii) any other documents, reflecting the

> nature and quantity of any alleged contraband recovered, the results of any
> field and lab tests reflecting whether any of the items recovered were
> found to be contraband, and whether any arrests were made or desk
> appearance tickets or summonses issued.

ECF No. 52 at 2-3.

Defendants opposed Plaintiff's motion to compel.  See ECF No. 53.  Defendants noted that they had objected to the document request because (1) Plaintiff belatedly served the disputed document request; (2) it seeks the production of documents that are protected by the law-enforcement privilege, the official-information privilege, and the confidential-informant privilege, production of which would "violate[] the privacy, safety, and security interests of the CI"; (3) it seeks the production of documents that are protected by N.Y. Crim. P. L. §§ 160.50 and 160.55; (4) it seeks the production of documents that is broader in scope than any documents ordered to be produced in Alston and Cottingham, potentially rendering it unduly burdensome; and (5) it

> is overbroad and not proportional to the needs of the case[,] as it requests various
> types of documents concerning unrelated criminal investigations and irrelevant
> documents reflecting the nature and quantity of any alleged contraband recovered,
> the results of any field and lab tests reflecting whether any of the items recovered
> were found to be contraband, and whether any arrests were made or desk
> appearance tickets or summonses issued for instances unrelated to this matter,
> particularly since this case does not regard, inter alia, drugs or summonses.

Opp. to Mot. to Compel, ECF No. 53 at 1-4.  Defendants alternatively request that, if they are compelled to produce the disputed documents, they be permitted to categorize such documents as "confidential" and "attorneys' eyes only" and to apply redactions as appropriate.  See id. at 4.[7] [8]

---

[7] Defendants' request for "a temporary stay of the deadline to take the first step in dispositive motion practice until 30 days after all of the outstanding discovery motions are decided" is moot, in view of District Judge Eric R. Komitee's March 9, 2023 Order.  See 3/9/2023 Order.

[8] The Court declines to issue a ruling on the categorization of the documents as "confidential"

Plaintiffs supplemented its motion by apprising the Court via letter of two orders entered by Magistrate Judge Taryn A. Merkl since the filing of the motion to compel, see Letter, ECF No. 55, and the Court permitted Defendants to respond, see 9/30/2022 Order.  Defendants responded, stating that, "to the extent that Plaintiff[] [is] . . . suggesting that[,] because Magistrate Judge Merkl's orders 'go a step further,' [she] . . . should be afforded additional discovery or a similar in camera review, Plaintiff['s] request should be denied to the extent that [she] . . . did not request an in camera review of said material during the discovery period."[9] Letter, ECF No. 56 at 2.

Plaintiff twice reiterated her request.  See Letter, ECF No. 62; Letter, ECF No. 63.

## B.    Discussion[10]

To ascertain whether Defendants must produce documents in response to Plaintiff's document request in dispute, the Court addresses each of Defendants' objections in turn.

### i.    Defendants' Objection That Plaintiff Served The Disputed Document Request Thirty-Seven Days Prior To The Close Of Discovery Is Overruled.

Defendants contend that, because Plaintiff served its document request close in time to the close of discovery, Plaintiff's motion to compel should be denied, and the timeframe for discovery to be completed should not be extended.  See Opp. to Mot. to Compel, ECF No. 53 at 2.  Fed. R. Civ. P. 34(b)(2)(B) provides a party on whom a document request is propounded

---

and "attorneys' eyes only" but notes that the parties are free to enter into a confidentiality agreement as they deem appropriate or to request a protective order tailored to the anticipated production.

[9] The Court has not conducted an in camera review of the documents that are responsive to the disputed discovery request, nor does it interpret any of Plaintiff's filings as requesting such relief.

[10] See infra, n.4.

thirty days within the date of service to respond.  Although serving a document request late in the discovery period may not amount to best practices in the context of ongoing discovery, it does not amount to a proper basis on which to preclude the discovery sought.  Defendants' objection is overruled.

> ### ii.   Defendants' Objection That The Documents Sought Are Protected By The Law-Enforcement Privilege, The Confidential-Informant Privilege,[11] And The Official-Information Privilege Is Overruled.

> > #### a.   Limited Discovery Of The Documents Sought Is Not Precluded By The Law-Enforcement Privilege.[12]

Defendants contend that the documents sought are protected by the law-enforcement privilege.  Opp. to Mot. to Compel, ECF No. 53 at 2-4.

Plaintiff relies on orders in two cases from this District, Alston and Cottingham, to substantiate her contention that she is entitled to the documents sought, in spite of Defendants' assertion of the law-enforcement privilege.  See Mot. to Compel, ECF No. 52; Letter, ECF No. 55.

In Alston v. City of New York, 19 Civ. 3978 (ST) (E.D.N.Y.), the plaintiffs filed a complaint based on a search of a residence allegedly unsupported by probable cause.  See id., ECF No. 1.  The plaintiffs moved to compel discovery of (1) "documentation reflecting CI's

---

[11] The so-called "informer's privilege" falls within the scope of the law-enforcement privilege and is therefore subsumed within the Court's analysis of the law-enforcement privilege.  See In re City of New York, 607 F.3d at 941-42 n.18 (citations & quotations omitted).

[12] The Court also addresses Defendants' objection that the document request seeks the production of documents that is broader in scope than any documents ordered to be produced in Alston and Cottingham in conjunction with the objection as to the law-enforcement privilege, see Opp. to Mot. to Compel, ECF No. 53 at 2, given their relatedness.  The Court overrules Defendants' companion objection that "there is a chance that Plaintiff['s] request is also unduly burdensome, id., as Defendants have failed to provide information as to whether this hypothetical objection might materialize.

record of accuracy," including "whether raids conducted on the word of the CI resulted in

discovery of the actual contraband sought by the warrant, as opposed to general terms such as

'positive results,'" and (2) "documentation reflecting all other raids by the NYPD in search of JD

Yung-Staccs, both before and after the raid at issue in this case."  Id., ECF No. 53 at 1-2.  In their

motion, the plaintiffs specifically recommended that,

> if defense counsel has any qualms about the possibility that the document sought
> by [the] plaintiffs' motion might reveal the identity of the CI and or [sic] police
> activity that allegedly should remain confidential, the obvious solution would be
> for him to submit the material and proposed redactions to Your Honor for in
> camera review – not to deny the motion to compel outright and preclude [the]
> plaintiffs from obtaining discovery that is vital to their case.

Id., ECF No. 53 at 2.  Magistrate Judge Steven L. Tiscione granted in part and denied in part the

motion, ordering the defendants to

> produce information about whether there were any other searches/raids on JD
> Young Stacs, whether the CI was terminated as a CI as a result of the search at
> issue in this case, and specific information on any prior searches based on the CI's
> information including the items being sought and items that were found during the
> search.

Id., ECF No. 57.  The plaintiffs subsequently filed a motion seeking relief in relation to the

defendants' alleged non-compliance with Judge Tiscione's Order; more specifically, the

plaintiffs sought discovery of (1) the specific items sought on the basis of information provided

by the confidential informant for each of the subject search warrants, evidenced by the

documents requesting approval to seek a search warrant, pre-execution paperwork and post-

execution paperwork, and (2) information as to whether any other search warrants were executed

for JD Yung-Staccs or, alternatively, an affidavit from an appropriate official that such

information could not be ascertained.  See id., ECF No. 59 at 1-3.  In response, Judge Tiscione

ordered the defendants to "provide pre-execution and post-execution documents for the seven

search warrants conducted in 2019 based on the CI's information and a verified discovery response that no other warrants could be found regarding JD Young Stacs." Id., ECF No. 61.

In Cottingham v. City of New York, 21 Civ. 3372 (AMD) (TAM) (E.D.N.Y.), the plaintiffs filed a complaint based on a search of a residence allegedly unsupported by probable cause. See id., ECF No. 1. The plaintiffs requested that Judge Merkl "enter an [o]rder requiring [the] defendants to produce, as in Alston, specific information on any prior searches based on the CI's information including the items being sought and items that were found during the search and also including pre-execution documents and post-execution documents." Id., ECF No. 48 at 4 (quotations omitted). In their request, the plaintiffs acknowledged that, although the defendants claimed that the information sought was highly sensitive, "precautions can be taken to protect the anonymity of the CI" and that "[s]uch precautions are routinely taken in cases such as Alston." Id., ECF No. 48 at 4. In response, Judge Merkl ordered as follows:

> With respect to the production of relevant documents bearing upon CI 2's history, relationship with the NYPD, and reliability, the Court directs Defendants to produce specific information on any prior searches based on CI 2's information
>
> dating back two years prior to the search in this case, including the items being sought and items that were found during the search(es).

Id., 5/3/2022 Dkt. Entry. The plaintiffs sought relief from Judge Merkl in relation to the defendants' alleged non-compliance with her May 3, 2022 Order. See id., ECF No. 53 at 1; ECF No. 55 at 1-2. In response, Judge Merkl ordered the defendants to produce

> (1) pre-warrant execution documentation that establishes the basis of each of the relevant search warrants; (2) an indication of whether each of the searches was 'positive'; (3) an indication as to whether each of the searches led to a summons and/or arrest; and (4) property vouchers indicating what was recovered during each of the searches, including quantities, so as to be compared to the pre-warrant documentation.

Id., 8/16/2022 Dkt. Entry. She specifically stated that, "[t]o the extent the documents Defendants

produce contain specific, identifying information, they may be redacted as needed." Id.,

8/16/2022 Dkt. Entry.  The plaintiffs subsequently sought relief from Judge Merkl in relation to

the defendants' alleged non-compliance with her August 16, 2022 Order.  See id., ECF No. 58 at

1-3.  In doing so, the plaintiffs specifically conceded that "DD5s and similar documents

reflecting the CI's buys and observations leading to each warrant application . . . can be heavily

redacted of course, since [the] plaintiffs have no interest in any names or locations," and that

"[d]ates may also be redacted."  See id., ECF No. 58 at 2.  The defendants, in response, asked

that Judge Merkl seal the plaintiffs' letter motion and order the plaintiffs to file the letter motion

with redactions of "the names of the specific drugs recovered upon execution of prior search

warrants based on the information provided by CI 2."  Id., ECF No. 59 at 1 (footnote omitted).

In response, Judge Merkl ordered the defendants "to provide the Court with [their] . . . previous

responses to the discovery requests at issue in Plaintiffs' Motion" and "to produce all responsive

materials to the same requests, including DD5s and other pre-execution paperwork, ex parte, for

in camera review."  Id., 9/27/2022 Order.  Judge Merkl also denied the defendants' motion to

seal.  See id., 9/27/2022 Order.  The Court's review and discussion with counsel of issues related

to the requested production continues in light of ongoing settlement discussions.  See id.,

3/13/2023 Order.

   Here, the information sought is relevant, given that it reveals historical information as to

the CI's reliability.  The law-enforcement privilege applies, as Defendants have shown that

revealing this information would undermine the confidentiality of the informant.  Plaintiff has

demonstrated a compelling need for information pertaining to the CI's reliability, given that,

pursuant to McColley, the totality of the circumstances analysis performed to ultimately

determine whether a search warrant was supported by probable cause based on information

provided by the CI includes consideration of the CI's truthfulness, reliability and knowledge base.  Balancing the public interest in nondisclosure against Plaintiff's compelling need for the information, Plaintiff's need prevails, with an important caveat: Plaintiff is not entitled to any information tending to identify the CI.  Defendants, or the entity preparing the documents for production, must determine whether the documents to be produced contain any information tending to identify the CI and redact such information prior to production to Plaintiff.  This procedure aligns with the procedure recommended by the plaintiffs in both Alston and Cottingham, as well as Judge Merkl's Order as to redactions.

> **b.**     **Discovery Of The Documents Sought Is Not Precluded By The Official-Information Privilege.**

Defendants contend that the official-information privilege bars production of the documents sought.  See Opp. to Mot. to Compel, ECF No. 53 at 1.  As discussed supra, Section III(b)(ii)(a), the documents sought are relevant to the claims in this action.

The official information "privilege protects only expressions of opinion or recommendations in intragovernmental documents; it does not protect purely factual material." Rouson ex rel. Estate of Rouson v. Eicoff, No. 04 Civ. 2734 (ARR) (KAM), 2006 WL 2927161, at *4 (E.D.N.Y. Oct. 11, 2006) (citation & quotations omitted).  This privilege is "discretionary," and, "[a]s a general rule[,] the lower the level of the official making the observation and the lower the level of abstraction in the writing, the less need for the privilege."  Id., at *5 (citation & quotations omitted).  Application of the privilege depends upon the "weigh[ing of] the government's interest in nondisclosure against those of the litigants and society in accurate judicial fact finding," which requires consideration of

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence . . . ; (iii) the seriousness of the litigation and the issues involved . . . ; (iv) the role of the government in the litigation . . . ; and (v) the possibility of

> future timidity by government employees who will be forced to recognize that
> their secrets are violable.

Id. (citations & quotations omitted).  "The party asserting the privilege has the burden of

demonstrating its applicability."  Id. (citation omitted).

Defendants inject a mere passing reference to the official-information privilege in their

cited objections to the document request but fail to cite the standard for its application, let alone

analyze its applicability to the circumstances of this case.  See Opp. to Mot. to Compel, ECF No.

53 at 1.  Defendants bear the burden of demonstrating the applicability of the official-

information privilege but have failed to do so.  As such, the Court will not rely upon its own

reasoning as to the potential applicability of the privilege to excuse Defendants' failure to meet

their burden.

### ii.     Defendants' Objection That The Documents Sought Are Protected By N.Y. Crim. P. L. §§ 160.50 And 160.55 Is Premature.

Defendants object to the document request on the basis of N.Y. Crim. P. L. §§ 160.50 and

160.55.  Defendants have not provided any explanation as to the applicability of these provisions

to this case or to any other unknown cases or documents that are covered by the document

request.  At this juncture, determining whether either provision applies, without further

information and without reviewing the underlying documents, is not possible.  The Court

declines to render a decision as to the applicability of N.Y. Crim. P. L. §§ 160.50 and 160.55

because doing so would be premature.

### iii.    Defendants' Objection That The Document Request Is Overbroad And Not Proportional To The Needs Of The Case Is Overruled.

Defendants contend that the document "request is overbroad and not proportional to the

needs of the case," given that it seeks documents from unrelated criminal investigations.  Opp. to

Mot. to Compel, ECF No. 53 at 1-2.  The Court does not find the request to be overbroad, given

that the historical data from the two years immediately preceding the issuance of the search warrant at issue in this case is pertinent to assessing the CI's reliability.  That the documents stem from unrelated criminal investigations is reasonable, given that the pertinent assessment of reliability occurs over time and across different cases.  As to the proportionality objection, Defendants have not presented the Court with any indication that the documents sought are so voluminous or their compilation so cumbersome or time-consuming to justify their withholding. Defendants' objection is overruled.

## IV.    CONCLUSION

As to the first motion, the Court's in camera review revealed that almost all redactions of the Affidavit and Transcript imposed by the KCDA are proper, with the exception of the year in which the CI began working with the NYPD; see KCDA-003, paragraph 2, line 4; the year in which the CI provided information to the NYPD, see KCDA-003, paragraph 2, lines 7; the number of search warrants issued on the basis of reliable information provided the CI, see KCDA-003, paragraph 2, lines 7; KCDA-007, line 24; the county in which the aforementioned search warrants were executed, see KCDA-003, paragraph 2, line 9; and the response pertaining to the year of execution of a search warrant based on information from the CI that yielded negative results, see KCDA-008, lines 6-7.  As to the second motion, Plaintiff's motion to compel is granted, except Plaintiff is not entitled to any information tending to identify the CI, and any such information contained in the documents to be produced may and should be redacted by either Defendants or the producing party.

On or before April 14, 2023, the parties are to submit a joint letter to the Court with a detailed proposed revised discovery schedule in accordance with the terms of this Order, including, but not limited to, deadlines for seeking any unsealing orders needed, and a

specification as to the party who or which will seek such orders, and for production of the

documents that are the subject of the motion to compel.

The KCDA should contact chambers to arrange to retrieve the original unredacted

documents submitted in camera.

Dated: Brooklyn, New York
          March 30, 2023

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge

30